UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

MARK S. LANCASTER,                    )
                                      )
          Plaintiff,                  )
                                      )
v.                                    )          No. 3:18-CV-142-DCP
                                      )
ANDREW M. SAUL,[1]                    )
Acting Commissioner of Social Security, )
                                      )
          Defendant.                  )

## MEMORANDUM OPINION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 73 of the Federal

Rules of Civil Procedure, and the consent of the parties [Doc. 20].  Now before the Court are

Plaintiff's Motion for Summary Judgment and Memorandum in Support [Docs. 21 & 22] and

Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 23 & 24].  Mark

S. Lancaster ("Plaintiff") seeks judicial review of the decision of the Administrative Law Judge

("the ALJ"), the final decision of Defendant Andrew M. Saul ("the Commissioner").  For the

reasons that follow, the Court will **DENY** Plaintiff's motion and **GRANT** the Commissioner's

motion.

## I.      PROCEDURAL HISTORY

On January 13, 2015, Plaintiff filed an application for supplemental security income

pursuant to Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.*, alleging disability

beginning on August 8, 2011.  [Tr. 10, 59, 161].  After his application was denied initially and

---

[1] Andrew M. Saul was sworn in as the Commissioner of Social Security on June 17, 2019, during the pendency of this case.  Therefore, pursuant to Federal Rule of Civil Procedure 25(d), Andrew M. Saul is substituted as the Defendant in this case.

upon reconsideration, Plaintiff requested a hearing before an ALJ. [Tr. 104–06]. A hearing was held on March 7, 2017. [Tr. 24–58]. On September 19, 2017, the ALJ found that Plaintiff was not disabled. [Tr. 10–19]. The Appeals Council denied Plaintiff's request for review on March 6, 2018 [Tr. 1–6], making the ALJ's decision the final decision of the Commissioner.

Having exhausted his administrative remedies, Plaintiff filed a Complaint with this Court on April 4, 2018, seeking judicial review of the Commissioner's final decision under Section 405(g) of the Social Security Act. [Doc. 1]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## II. ALJ FINDINGS

The ALJ made the following findings:

1. The claimant has not engaged in substantial gainful activity since January 13, 2015, the application date (20 CFR 416.971 *et seq.*).

2. The claimant has the following severe impairments: major depressive disorder, recurrent, severe, without psychotic features (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c) except that the claimant could understand, remember, and carry out simple and low-level detailed instructions and tasks; could never have contact with the public, and occasionally have contact with co-workers, and supervisors in an environment where workplace changes are occasionally and gradually introduced.

5. The claimant is capable of performing past relevant work as an electrician's helper (Dictionary of Occupational Titles entry 824.261-022, medium, semiskilled, SVP 3). This work does not require the performance of work-related activities precluded by the

claimant's residual functional capacity (20 CFR 416.965).

6. The claimant has not been under a disability, as defined in the Social Security Act, since January 13, 2015, the date the application was filed (20 CFR 416.920(f)).

[Tr. 12–18].

## III. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citation omitted); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted).

On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y. of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted).

## IV. DISABILITY ELIGIBILITY

"Disability" is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). A claimant will only be considered disabled:

> if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.

> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

4

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). A claimant's residual functional capacity ("RFC") is assessed between steps three and four and is "based on all the relevant medical and other evidence in your case record." 20 C.F.R. §§ 404.1520(a)(4), -(e) and 416.920(a)(4), -(e). An RFC is the most a claimant can do despite her limitations. 20 C.F.R. §§ 404.1545(a)(1) and 416.945(a)(1).

The claimant bears the burden of proof at the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

## V.     ANALYSIS

Plaintiff asserts that the ALJ's RFC determination is not supported by substantial evidence, as he contends that the ALJ improperly weighed the medical opinions of record. First, Plaintiff challenges the ALJ's assignment of great weight to the opinions of the nonexamining state agency psychologists, and little weight to the opinions of the examining psychological consultants, as "the assessments of the examiners were essentially rejected in favor of the opinion of a non-examining physician." [Doc. 22 at 8]. Plaintiff claims the ALJ improperly rejected the opinions of four physical and psychological consultative examiners, while assigning great weight to the opinions of the nonexamining state agency physicians. Further, Plaintiff asserts that the ALJ "failed to adequately address Plaintiff's mental health records in full when arriving at the mental-health related limitations Plaintiff suffers from when determining Plaintiff's residual functional capacity." [*Id.* at 12]. The Court will address Plaintiff's specific allegations of error in turn.

## A.     ALJ's Treatment of the Medical Opinions

Plaintiff claims that the ALJ improperly assigned great weight to the opinions of the nonexamining state agency physicians over the opinions of the examining physical and psychological consultative examiners, as Plaintiff asserts that the opinions of the consultative examiners are more consistent with the medical record.  However, the Commissioner responds that the ALJ appropriately afforded great weight to the opinions of the state agency physicians by finding that they were more consistent with the medical record, and stated her reasoning for the weight assigned to each opinion.  [Doc. 24 at 17].

### 1.     Medical Opinions

Robert Blaine, M.D., consultatively examined Plaintiff on April 7, 2014.  [Tr. 279].  Dr. Blaine reviewed Plaintiff's allegations of neck, hip, and knee pain, and assessed that Plaintiff could stand or walk for two hours in an eight-hour day, as well as sit for eight hours, with reasonable rest breaks.  [Tr. 281].  Additionally, Dr. Blaine found that Plaintiff could lift and carry twenty pounds infrequently.  [*Id.*].

Jeffrey Summers, M.D., consultatively examined Plaintiff on April 8, 2015.  [Tr. 288].  Dr. Summers noted that Plaintiff reported problems with "stiffness and aching pain in all [of his] joints," as well as that he had been diagnosed with arthritis, but had been treated with medications with modest improvement and did not require any related surgery.  [*Id.*].  On examination, Dr. Summers summarized that Plaintiff "has a decrease in range of motion of his cervical and lumbar spine areas with limited effort," and "[b]ased on these findings, it is reasonable to expect Mr. Lancaster will have difficulty twisting/turning his head, elevating his arms about shoulder level, and reaching/pushing/pulling."  [Tr. 290].  Additionally, Dr. Summers found that Plaintiff would have difficulty bending, stooping, kneeling, squatting, crouching, crawling, climbing, and lifting

twenty pounds; while he appeared capable of working from a seated position, and operating hand and foot controls.  [*Id.*].

In the disability decision, the ALJ found that Dr. Blaine and Dr. Summers' opinions were inconsistent with the objective evidence of Plaintiff's treatment, and assigned the opinions little weight "because they are overly restrictive and not consistent with the diagnostic reports in evidence."  [Tr. 16].  However, the ALJ noted that "out of an abundance of caution," she reduced Plaintiff's physical RFC to medium work, "notwithstanding the absence of definitive physical diagnosis and consistent treatment."  [*Id.*].

With respect to Plaintiff's mental impairments, Plaintiff was consultatively examined by Ellen Denny, Ph.D., on February 20, 2014.  [Tr. 282].  Dr. Denny noted that Plaintiff reported that he was admitted to LeConte Center the previous summer because he was suicidal, as well as that he had been in outpatient treatment at Helen Ross McNabb for psychiatric treatment "for the past year or so."  [*Id.*].  Dr. Denny detailed that Plaintiff reported that he worked as an electrician for his father's business from 1992 until two-and-a-half years prior to the examination, "when he developed physical problems that prevented him from doing the job."  [Tr. 285].  As a result, Dr. Denny noted that Plaintiff stated that he has been chronically depressed since the loss of his job, as well as has panic attacks while driving because he is afraid of being hit by another car.  [*Id.*].  Dr. Denny further detailed that Plaintiff is able to do "a few of the household chores," although tasks take him a long time, he makes homemade meals, he does not get out much due to being "ashamed over his current situation," and that he has lost around 140 pounds over the past six years due to a loss of appetite.  [*Id.*].  Additionally, Dr. Denny reported that Plaintiff stated that he gets along well with others and has meaningful relationships with his parents, as well as that further testing would be necessary in order to clarify a dyslexia diagnosis.  [*Id.*].

Therefore, Dr. Denny diagnosed persistent depressive disorder, late onset, with persistent major depressive episode, moderate to severe; agoraphobia; and rule out learning disability. [*Id.*]. First, Dr. Denny noted that Plaintiff reported "symptoms and medical conditions that would need to be assessed by a physician in determining the limiting effect on [his] ability to work." [*Id.*]. However, Dr. Denny found that Plaintiff displayed moderate impairment in understanding and remembering, as well as sustaining concentration and attention and adapting to changes and requirements, but that he displayed mild impairment in interacting with others. [*Id.*].

Kevin Blanton, Ph.D., consultatively examined Plaintiff on April 23, 2015. [Tr. 291]. Dr. Blanton reviewed Plaintiff's current medications, personal and family history, work history, substance abuse history, current signs and symptoms, as well as performed a mental status examination. [Tr. 291–94]. Accordingly, Dr. Blanton diagnosed Plaintiff with major depressive disorder, single episode, moderate; unspecified anxiety disorder; and panic disorder, provisional. [Tr. 294]. Therefore, Dr. Blanton opined that Plaintiff's ability to understand and remember instructions was moderately impaired as a result of mood and anxiety difficulties; while his ability to sustain attention and concentration, interact with people, and adapt to changes in routine or work-like settings were all moderately to severely impaired. [Tr. 294–95].

In the disability decision, the ALJ noted that Dr. Denny found moderate to severe limitations regarding Plaintiff's adaption, while Dr. Blanton found moderate to severe limitations of attention and concentration. [Tr. 16]. However, the ALJ afforded both opinions little weight, as they were "overly restrictive" in terms of Plaintiff's treatment records and progress notes from Helen Ross McNabb. [Tr. 16–17]. With respect to Plaintiff's ability to adapt, the ALJ detailed that Plaintiff's therapist noted that although he mentioned being "stressed and depressed" about his finances, he was calm, engaged, well-groomed, and declined the offer of "community

resources." [Tr. 17 (citing Tr. 439, 531)]. The ALJ therefore found that this was inconsistent with the opined limitations related to Plaintiff's ability to adapt. [Tr. 17]. Additionally, the ALJ detailed that Plaintiff reported to his therapist on January 5, 2015 that his attention and concentration were "pretty good," as well as that Plaintiff's thought processes were found to be focused and logical, with his concentration fair. [*Id.* (citing Tr. 439, 515)]. The ALJ noted that these progress notes were inconsistent with Plaintiff's reports to the consultative examiners, and the ALJ found that Plaintiff's allegations were not consistent with the medical evidence. [Tr. 17].

The ALJ therefore assigned great weight to the opinions of the nonexamining state agency psychologists, "who found no more than moderate mental limitation[s]," based upon the discussed progress notes. [*Id.*]. Eran Stanley, M.D., assessed the evidence of record at the initial level of the agency's review on May 4, 2015, and opined that Plaintiff was not significantly limited in the ability to remember locations and work-like procedures or the ability to understand and remember very short and simple instructions, but that he was moderately limited in the ability to understand and remember detailed instructions. [Tr. 67]. When assessing Plaintiff's sustained concentration and persistence limitations, Dr. Stanley found that Plaintiff was not significantly limited in the ability to carry out very short and simple instructions, perform activities within a schedule, sustain an ordinary routine without special supervision, or make simple work-related decisions; but that Plaintiff was moderately limited in the ability to carry out detailed instructions, maintain attention and concentration for extended periods, work in coordination with or in proximity to others without being distracted by them, and the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms. [*Id.*].

When reviewing Plaintiff's social interaction limitations, Dr. Stanley found that Plaintiff was markedly limited in the ability to interact with the general public; moderately limited in the

ability to accept instructions and respond appropriately to criticism from supervisors and get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and that Plaintiff was not significantly limited in the ability to ask simple questions or request assistance and maintain socially appropriate behavior. [Tr. 68]. Lastly, when assessing Plaintiff's adaption, Dr. Stanley found that Plaintiff was moderately limited in his ability to respond appropriately to changes in the workplace; but that he was not significantly limited in the ability to be aware of normal hazards and take appropriate precautions, travel in unfamiliar places or use public transportation, and the ability to set realistic goals or make plans independently of others. [*Id.*].

Accordingly, Dr. Stanley opined that Plaintiff could understand and remember simple and low detail tasks, and that, despite some difficulty, he could concentrate and persist for the above tasks for an eight-hour day, with customary breaks, within the applied restrictions. [*Id.*]. Further, Dr. Stanley found that Plaintiff could not effectively interact with the public, but that he was able to superficially work with co-workers and supervisors, although within the applied restrictions. [*Id*]. Lastly, Dr. Stanley opined that Plaintiff could adapt to infrequent change and set independent goals within the previously-opined restrictions. [*Id.*]. Hillel Raclaw, Ph.D., reviewed the evidence of record at the reconsideration level of the agency's review on July 28, 2015, and opined identical limitations with respect to Plaintiff's understanding and memory, sustained concentration and persistence, social interaction, and adaption limitations. [Tr. 81–83].

### 2. General Challenge to Assignment of Great Weight to Opinions of Nonexamining State Agency Physicians

Plaintiff broadly challenges the ALJ's assignment of great weight to the opinions of the nonexamining state agency physicians over the opinions of the consultative psychological examiners.

Opinions from non-treating sources are never assessed for controlling weight but are evaluated using the regulatory balancing factors set forth in 20 C.F.R. § 416.927(c). *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citing 20 C.F.R. § 404.1527(c)). These opinions are weighed "based on the examining relationship (or lack thereof), specialization, consistency, and supportability." *Id.* (citing 20 C.F.R. § 404.1527(c)). "Other factors 'which tend to support or contradict the opinion' may be considered in assessing any type of medical opinion." *Id.* (quoting 20 C.F.R. § 404.1527(c)(6)). An ALJ is only required to provide good reason for explaining the weight assigned to the opinion of a "treating source." 20 C.F.R. § 416.927(c)(2); *see Perry v. Comm'r of Soc. Sec.*, 501 F. App'x 425, 426 (6th Cir. 2012) ("An ALJ need not 'give good reasons' for the weight he assigns opinions from physicians who, like Dr. Pickering, have examined but not treated a claimant.").

"State agency medical consultants . . . are 'highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the [Social Security] Act.'" *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 834 (6th Cir. 2016) (quoting Soc. Sec. Rul. 96–6p, 1996 WL 374180, at *2 (July 2, 1996)). Therefore, "[i]n appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources." SSR 96–6p, 1996 WL 374180, at *3. "One such circumstance . . . [is] when the 'State agency medical . . . consultant's opinion is based on review of a complete case record.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009) (quoting SSR 96–6p, 1996 WL 374180, at *3).

However, "the ALJ is 'under no special obligation' to provide great detail as to why the opinions of the nonexamining providers 'were more consistent with the overall record' than the

examining, but nontreating providers." *Jenkins v. Soc. Sec. Admin.*, No. 3:14-cv-1713, 2017 WL 2692624, at *9 (M.D. Tenn. June 21, 2017) (citing *Norris v. Comm'r of Soc. Sec.*, 461 F. App'x 433, 440 (6th Cir. 2012)); *see Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994) (explaining that opinions from one-time consultative examiners are not due any special degree of deference). "[A]n ALJ may credit the views of a nonexamining doctor over those of someone who has examined the claimant where the nonexaminer's opinion is better supported by the objective evidence and more consistent with the record as a whole." *Dixon v. Astrue*, No. 2:11-CV-148, 2012 WL 441194, at *4 (E.D. Tenn. Feb. 10, 2012) (citing *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 652 (6th Cir. 2006)). The opinions of the nonexamining state agency consultants were properly found to be more consistent with the medical record, and the ALJ appropriately explained her decision in weighing the respective opinions. *See Norris*, 461 F. App'x at 440 ("While perhaps the ALJ could have provided greater detail, particularly as to why the nonexamining opinions were more consistent with the overall record, the ALJ was under no special obligation to do so insofar as he was weighing the respective opinions of nontreating versus nonexamining sources.") (citing *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007)).

The Court notes that although an ALJ is required to consider every medical opinion in the record, 20 C.F.R. § 404.1527(c), she is not bound to adopt any particular opinion when formulating a claimant's RFC. *See Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013) ("[T]o require the ALJ to base her RFC finding on a physician's opinion, 'would, in effect, confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled.'") (quoting SSR 96-5p, 1996 WL 374183 (July 2, 1996)). The ALJ is responsible for weighing medical opinions, as well as

resolving conflicts in the medical evidence of record.  *Richardson v. Perales*, 402 U.S. 389, 399 (1971); *see also* 20 C.F.R. § 416.946(c) (stating the final responsibility for assessing a claimant's RFC rests with the ALJ).

Ultimately, the Court finds that the ALJ's assignment of little weight to the opinions of the examining consultants is supported by substantial evidence, as the ALJ was not required to accept the opinions of the examining physicians due to the fact that they had examined Plaintiff.  Plaintiff largely fails to provide specific challenges to the ALJ's reasoning behind the assignment of little weight to the opinions of the consultative examiners; rather, Plaintiff claims that the ALJ's RFC determination is not supported by substantial evidence because the consultative examiners opined more restrictive limitations.  However, the ALJ was not required to adopt the opinions of the consultative examiners, and detailed her reasoning for assigning little weight to the opinions.  The ALJ properly considered the supportability of the opinions with the medical record and Plaintiff's subjective allegations.  *See Norris*, 461 F. App'x at 469 (holding a consultative examiner's opinion "may be rejected by the ALJ when the source's opinion is not well supported by medical diagnostics or if it is inconsistent with the record").  Yet, the Court will also address Plaintiff's specific arguments with respect to the ALJ's treatment of the consultative examiners' opinions.

### 3.      Plaintiff's Specific Challenges to ALJ's Treatment of Consultative Examiners' Opinions

Plaintiff first claims that the ALJ "discredits [his] disclosures to the in-person consultative examiners in order to erode the supportability of Dr. Denny and Dr. Blanton's opinions," as well as that "Dr. Denny and Dr. Blanton both gave more restrictive assessments of Plaintiff's mental health struggles than the non-examining psychologist."  [Doc. 22 at 8].  The Court notes that "good reasons"  need only be  given  in  explaining  weight  assigned  to  an  opinion  from

13

a treating source. *See* 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion."); *Engebrecht v. Comm'r of Soc. Sec.*, 572 F. App'x 392, 397 (6th Cir. 2014) ("However, the 'good reasons' requirement 'only applies to treating sources.'") (quoting *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010)). Further, even when discussing treating source's opinions, "the ALJ may give her reasons in an 'indirect but clear' or 'implicit[ ]' manner." *DePottey v. Comm'r of Soc. Sec.*, No. 13–CV–13305, 2014 WL 4197362, at *12 (E.D. Mich. Aug. 22, 2014) (citing *Brock v. Comm'r of Soc. Sec.*, 368 F. App'x 622, 625 (6th Cir. 2010)) (other citations and internal quotation marks omitted). Here, the ALJ appropriately considered the nonexamining consultants' status as specialists in the field of disability, as well as the consistency of their opinions with the medical record. *See Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citing 20 C.F.R. § 404.1527(c) to note that opinions from nonexamining sources are weighed "based on the examining relationship (or lack thereof), specialization, consistency, and supportability").

In the disability decision, the ALJ noted how Plaintiff's progress notes from his treating therapists at Helen Ross McNabb were inconsistent with the opined severe limitations in adaption and attention and concentration in Dr. Denny and Dr. Blanton's opinions. [Tr. 16–17]. For example, the ALJ found that Plaintiff's progress notes indicating that his thought processes were noted to be focused and logical, and his concentration fair, was "inconsistent with his reports to the consultative examiner." [Tr. 17]. Accordingly, the ALJ properly detailed how the opinions of the consultative examiners were inconsistent with the medical record, as well as identified inconsistencies between Plaintiff's statements to the examiners and his treatment notes. *See, e.g.*, *Hobbs v. Comm'r of Soc. Sec.*, No. 5:18-CV-446, 2019 WL 315046, at *13 (N.D. Ohio Jan. 23,

2019) ("The ALJ also complied with the regulations when he explained that consulting physician Dr. Vogelgesang's opinion was due little weight because it was inconsistent with his own examination notes, Hobbs' reports that he improved with conservative care, and Hobbs' reported daily living and work activities."); *see also* 20 C.F.R. § 404.1527(c) (directing that an ALJ evaluates a non-treating source opinion by considering the supportability of the opinion).

Next, Plaintiff asserts that the opinions of the consultative examiners were more consistent with the medical record than the opinions of the nonexamining state agency physicians, pointing to his unsuccessful vocational rehabilitation program and testimony during the disability hearing. [Doc. 22 at 9]. The Court has already found that the ALJ properly detailed how Dr. Denny and Dr. Blanton's opinions were not consistent with the medical record. Further, the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [the alleged mental symptoms were] not entirely consistent with the medical evidence and other evidence in the record." [Tr. 17]. Ultimately, Plaintiff challenges the ALJ's evaluation of the medical record when affording little weight to consultative psychological examiners' opinions. However, Plaintiff's own interpretation of the evidence is insufficient to undermine the ALJ's finding. *See Huizar v. Astrue*, No. 3:07CV411-J, 2008 WL 4499995, at *3 (W.D. Ky. Sept. 29, 2008) ("While plaintiff understandably argues for a different interpretation of the evidence from that chosen by the ALJ, the issue is not whether substantial evidence could support a contrary finding, but simply whether substantial evidence supports the ALJ's findings.").

Plaintiff also claims that the ALJ failed to address "Dr. Denny's position that Plaintiff needs further testing to address whether or not he has agoraphobia." [Doc. 22 at 10]. Plaintiff asserts that "[i]t is reasonable to infer that Dr. Denny's limitations of 'moderate to severe impairment in adapting to changes and requirements' coupled with Agoraphobia . . . would likely

have impacted the finding" in the RFC determination that Plaintiff could occasionally have contact with co-workers and supervisors in an environment where workplace changes are occasionally and gradually introduced. [*Id.*]. Therefore, Plaintiff claims that the ALJ failed to explain why this limitation was excluded. [*Id.*].

The regulations provide that the agency "may ask [the claimant] to have one or more physical or mental examinations or tests" if the claimant's "medical sources cannot or will not give us sufficient medical evidence" to determine whether the claimant is disabled. 20 C.F.R. § 416.917. Additionally, "[a]n ALJ has discretion to determine whether further evidence, such as additional testing or expert testimony, is necessary." *Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001). The ALJ had no "special, heightened duty to develop the record" in this case because Plaintiff was represented by counsel. *Nabours v. Comm'r of Soc. Sec.*, 50 F. App'x 272, 275 (6th Cir. 2002). Further, it is not error to fail to obtain additional evidence where the record contains a "considerable amount of evidence" pertaining to the claimant's limitations. *Culp v. Comm'r of Soc. Sec.*, 529 F. App'x 750, 751 (6th Cir. 2013). However, the ALJ has the ultimate responsibility to ensure that a claimant receives a full and fair hearing, *Richardson v. Perales*, 402 U.S. 389, 411 (1971), which includes a duty to fully and fairly develop the record. *See Johnson v. Sec'y of Health & Human Servs.*, 794 F.2d 1106, 1111 (6th Cir. 1986).

"An ALJ has a duty to develop the record where the evidence suggests that a mental impairment exists." *Brooks v. Astrue*, No. 3:09-CV-432, 2011 WL 652839, at *8 (E.D. Tenn. Jan. 26, 2011), *report and recommendation adopted by*, 2011 WL 652837 (E.D. Tenn. Feb. 14, 2011). An ALJ's failure to exercise their discretion to obtain additional evidence when the record is inadequate is a ground for remand or reversal. *Ward v. Comm'r of Soc. Sec.*, 198 F. Supp. 3d 825, 830 (S.D. Ohio 2016). However, in the present case, the ALJ properly considered the medical

record and evidence as a whole in considering Plaintiff's RFC, and thus was not required to further develop the record.

Initially, as the Court has previously discussed, the ALJ properly held that Dr. Denny's opinion was entitled to little weight, as it was inconsistent with the medical record. Therefore, although Dr. Denny opined that further testing may be required to determine whether Plaintiff suffered from agoraphobia, the ALJ discredited the basis for this opinion. *See Brooks*, 2011 WL 652839, at *10 (holding "substantial evidence supports the ALJ's decision to not order IQ testing," despite the recommendation from the consultative examiner, as "Dr. Booher was the only physician of record who indicated that Plaintiff was potentially functioning in the mild mental retardation range, and she made this judgment based primarily on the Plaintiff's subjective complaints, which the ALJ discounted").

Additionally, the ALJ properly considered the entire medical record in assessing Plaintiff's RFC, including reviewing Plaintiff's treatment notes with therapists, reported daily activities, as well as the opinions of two psychological consultative examiners and two nonexamining state agency psychological consultants. In *Robertson v. Commissioner of Social Security*, the Sixth Circuit held the ALJ was not obligated to order an additional examination where the record contained a "considerable amount of medical evidence" relevant to the claimant's limitation and "resulting functional capacity," including "test results, physicians' notes, and opinion evidence from multiple physicians, and the lack of any significant inconsistencies in the evidence." 513 F. App'x 439, 441 (6th Cir. 2013); *see, e.g.*, *Culp v. Comm'r of Soc. Sec.*, 529 F. App'x 750, 751 (6th Cir. 2013) (addressing a mental RFC assessment).

Next, Social Security Ruling 96-8p provides that "[i]f the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."

1996 WL 374184, at *7 (July 2, 1996). However, the ALJ was not required to prove "good reasons" for rejecting the opinions of non-treating medical sources. *Norris v. Comm'r of Soc. Sec.*, 461 F. App'x 433, 439 (6th Cir. 2012) (noting "a claimant is entitled under the SSA only to reasons explaining the weight assigned to his treating sources"); *see Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (holding that "opinions from nontreating and nonexamining sources are never assessed for 'controlling weight'").

Further, the ALJ found that Dr. Denny's opinion was entitled to little weight, as Plaintiff's mental health treatment notes were in conflict with the opinion, as well as Plaintiff's reports to the consultative examiner. Here, the ALJ did not include the opined adaption limitation because she found that the opinion was inconsistent with the medical record. *See Stringer v. Colvin*, No. 3:14-1255, 2015 WL 5037064, at *8 (M.D. Tenn. Aug. 24, 2015) (holding the ALJ provided satisfactory explanation for weight afforded to opinion of non-treating physician, even though he did not specifically explain why he chose not to adopt each and every limitation offered), *report and recommendation adopted sub nom.*, *Stringer v. Soc. Sec. Admin.*, 2015 WL 5444802 (M.D. Tenn. Sept. 15, 2015); *Puckett v. Colvin*, No. 3:13-CV-01486, 2014 WL 1584166 at * 9 (N.D. Ohio April 21, 2014) (stating that, although the ALJ was not required to evaluate the opinions of consultative examiners with the same standard of deference to the opinion of a treating source, he was required to "acknowledge that [the examiners'] opinions contradicted his RFC finding and explain why he did not include their limitations in his determination of Plaintiff's RFC").

Lastly, Plaintiff asserts that the ALJ improperly assigned little weight to consultative examiner Dr. Summers' opinion by "fail[ing] to even mention Dr. Summers' impression that Plaintiff has osteoarthritis [,] which would lead to his opinion that Plaintiff is restricted to what amounts under 20 C.F.R. § 416.967(b) to light work." [Doc. 22 at 6]. Plaintiff contends that "[i]n

not properly weigh[ ]ing Dr. Summers' findings, the ALJ says there is not a definitive physical diagnosis and consistent treatment however[,] Plaintiff's medical records are replete with Plaintiff seeking help for his neck and hip pain." [*Id.* at 6–7].

In the disability decision, the ALJ noted that Dr. Summers' opinion was entitled to little weight because it was "overly restrictive and not consistent with the diagnostic reports in evidence." [Tr. 16]. In finding Plaintiff's alleged "neck issues" not to be a severe impairment, the ALJ noted that "magnetic resonance imaging [from March 15, 2012] documented no bony or soft tissue abnormality, and no stenosis." [Tr. 13 (citing Tr. 247)]. Additionally, the ALJ found that Plaintiff's alleged "hip issues" did not constitute a severe impairment because "there are no radiological findings consistent with 'hip issues,' or limitations from a hip impairment." [*Id.*]. The ALJ also detailed that "[i]n terms of the claimant's alleged neck pain, magnetic resonance imaging was normal, without disk space narrowing, bony abnormality, soft tissue abnormality, or stenosis." [Tr. 16 (citing Tr. 247)]. Further, the ALJ reviewed Plaintiff's daily activities and testimony to find that his "allegations of physical limitations are not supported by objective radiological tests." [Tr. 16].

Accordingly, the Court finds that the ALJ appropriately afforded little weight to Dr. Summers' opinion, and therefore was not required to adopt his impression that Plaintiff had osteoarthritis. Even though an ALJ "must consider [the] findings of State agency medical and psychological consultants, [he or she] is not bound by any findings made by State agency or psychological consultants." *Renfro v. Barnhart*, 30 F. App'x 431, 436 (6th Cir. 2002) (internal quotations and citation omitted). "While an ALJ must consider and weigh medical opinions, the RFC determination is expressly reserved to the Commissioner." *White v. Comm'r of Soc. Sec.*, 970 F. Supp. 2d 733, 753 (N.D. Ohio Sept. 10, 2013) (citing *Ford v. Comm'r of Soc. Sec.*, 114 F. App'x

194, 198 (6th Cir. 2004)). Here, the ALJ also reviewed the medical record with respect to Plaintiff's neck and hip pain, and found that Plaintiff's disabling allegations were not consistent with the medical record.

Ultimately, the ALJ's assignment of little weight to the consultative examiners' opinions is supported by substantial evidence, as the ALJ properly considered the supportability of the opinions with the medical record and examination findings. *See Norris v. Comm'r of Soc. Sec.*, 461 F. App'x 433, 440 (6th Cir. 2012) (holding a consultative examiner's opinion "may be rejected by the ALJ when the source's opinion is not well supported by medical diagnostics or if it is inconsistent with the record"). Plaintiff's arguments largely claim that the consultative examiners opined more restrictive limitations, and thus the RFC is not supported by substantial evidence. However, the Court finds that the ALJ's decision that the opinions of the consultative examiners were not consistent with the medical record is within the ALJ's "zone of choice." *See McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (noting the substantial evidence standard allows considerable latitude to ALJ's because it presupposes "there is a 'zone of choice' within which the Commissioner can act, without the fear of court interference") (quoting *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001)). Accordingly, Plaintiff's assignments of error do not constitute a basis for remand.

## B.    ALJ's RFC Determination

Plaintiff asserts several arguments regarding the ALJ's interpretation of the medical record related to his physical and mental impairments. First, Plaintiff alleges that the ALJ improperly implied that "Plaintiff was fishing for disability benefits which would strengthen her decision of 'not disabled.'" [Doc. 22 at 4]. Plaintiff contends that his treatment records from Helen Ross McNabb indicate he "was able to complete disability documentation and secure medical history,"

as well as that his short-term goal was to apply for disability so he could afford medical help, with a long-term goal of being financially "independent and be stable with anxiety and depression." [Tr. 259]. The Commissioner responds that the ALJ properly considered Plaintiff's statements regarding his desire for obtaining disability in evaluating his credibility. [Doc. 24 at 18].

The ALJ's decision postdates Social Security Ruling 16-3p, which eliminates the use of the term "credibility" from the applicable policy regulation, and clarifies that a "subjective symptom evaluation is not an examination of an individual's character." 2016 WL 1119029, at *1 (Mar. 16, 2016); *see also Rhinebolt v. Comm'r of Soc. Sec.*, No. 2:17-CV-369, 2017 WL 5712564, at *8 (S.D. Ohio Nov. 28, 2017) (noting that under SSR 16-3p, "an ALJ must focus on the consistency of an individual's statements about the intensity, persistence and limiting effects of symptoms, rather than credibility"), *report and recommendation adopted by*, 2018 WL 494523 (S.D. Ohio Jan. 22, 2018). However, "[t]he two-step process and the factors ALJs consider when assessing the limiting effects of an individual's symptoms have not changed with the advent of SSR 16-3p." *Holder v. Comm'r of Soc. Sec.*, No. 1:17-CV-00186-SKL, 2018 WL 4101507, at *10 n.5 (E.D. Tenn. Aug. 28, 2018).

The ALJ is still tasked with first determining whether there is an "underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." SSR 16-3p, 2016 WL 1119029, at *2–3. Then, the ALJ is responsible for determining the intensity, persistence, and limiting effects of an individual's symptoms, including assessing their: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, an individual receives

or has received for relief of pain or other symptoms; (6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. *Id.* at \*4–8.

As the Court has already reviewed, in the disability decision, the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [the alleged mental symptoms were] not entirely consistent with the medical evidence and other evidence in the record." [Tr. 17]. The ALJ also noted that Plaintiff "appears to have had secondary gain in seeking mental health treatment, as evidence by his intake statements that he wanted help with a disability application." [Tr. 16]. Plaintiff's treatment records state that he "needs support with securing documents for [his] disability appointment." [Tr. 259].

However, an ALJ can consider possible financial motivations for alleging disability, and "[o]ne inconsistency in the record which an ALJ can consider in discounting a claimant's credibility is the presence of a 'strong element of secondary gain.'" *James-Parker v. Comm'r of Soc. Sec.*, No. 1:11-cv-1236, 2013 WL 1150593, at \*6 (W.D. Mich. Mar. 19, 2013) (quoting *Gaddis v. Chater*, 76 F.3d 893, 896 (8th Cir. 1996)) (also citing *Foster v. Astrue*, 277 F. App'x 462, 466 (5th Cir. 2008); *Leech v. Barnhart*, 177 F. App'x 225, 228 (3rd Cir. 2006); *Eichelberger v. Barnhart*, 390 F.3d 584, 590 (8th Cir. 2004)). Plaintiff fails to cite to any supporting authority that the ALJ improperly considered his potential financial motive, and the Court finds "that the ALJ's consideration of [Plaintiff's] financial motivations was not the primary reason for denying [his] disability claim." *See, e.g.*, *Wildes v. Colvin*, No. 16-1235-TMP, 2018 WL 2386062, at \*5 (W.D. Tenn. May 25, 2018).

The ALJ detailed that although Plaintiff was diagnosed with major depressive disorder, recurrent, without psychotic features, treatment notes indicated that he "self-discontinued

prescribed medications." [Tr. 16]; *see* [Tr. 525]. Additionally, the ALJ noted that Plaintiff was able to stay at home and take care of his dad, that he liked to "hang out" with friends, watch movies, and that he was able to pay his bills on time. [Tr. 16]. The ALJ discussed that although Plaintiff alleged "nerve damage from being shocked," there was not objective confirmation to support this "somewhat vague and non-specific" allegation. [*Id.*]. Further, the ALJ noted that Plaintiff's testimony was inconsistent with respect to his positive cocaine tests and reported daily activities. [*Id.*]. The ALJ detailed that while Plaintiff testified that he was unable to walk farther than 100 yards, or stand for longer than thirty minutes, he was able to shop, care for his elderly parents, perform household chores such as vacuuming, was well groomed, and maintains a social life with friends. [*Id.*]. Therefore, the ALJ found that Plaintiff's "allegations of physical limitations are not supported by objective radiological tests, and his allegations of mental limitations are not supported by the treatment notes." [*Id.*].

"Despite the linguistic clarification, courts continue to rely on pre-SSR 16-3p authority providing that the ALJ's credibility determinations are given great weight." *Getz v. Comm'r of Soc. Sec.*, No. CV 18-11625, 2019 WL 2710053, at *3–4 (E.D. Mich. June 10, 2019), *report and recommendation adopted by*, 2019 WL 2647260 (E.D. Mich. June 27, 2019) (citing *Kilburn v. Comm'r of Soc. Sec.*, No. 1:17-CV-603, 2018 WL 4693951, at *7 (S.D. Ohio Sept. 29, 2018); *Duty v. Comm'r of Soc. Sec.*, No. 2:17-CV-445, 2018 WL 4442595, at *6 (S.D. Ohio Sept. 18, 2018)).

Plaintiff asserts that although the ALJ noted that he goes shopping, she failed to address a notation in Plaintiff's treatment records which states that "[h]e stays at his parents['] house, remaining in his room except to eat." [Doc. 22 at 5]; *see* [Tr. 266]. Additionally, Plaintiff maintains that the ALJ failed to mention the notation in Dr. Denny's opinion that he has lost 140 pounds over a six-year period and no longer socializes as much as he once did. [Doc. 22 at 5].

However, the Court finds that the ALJ appropriately considered the medical record, stated her reasoning for assigning little weigh to Dr. Denny's opinion, and did not mischaracterize Plaintiff's reported daily activities in the credibility determination. *See Shepard v. Comm'r of Soc. Sec.*, 705 F. App'x 435, 441 (6th Cir. 2017) ("The ALJ cited these activities as evidence that Shepard's testimony about the severity of her symptoms and her limited lifestyle was 'not entirely credible,' not to demonstrate that she was capable of light work."); *see, e.g.*, *Marcum v. Astrue*, No. 3:10-CV-122, 2011 WL 4398001, at *7 (E.D. Tenn. Aug. 3, 2011) ("The ALJ did not improperly rely on the Plaintiff's reported daily activities or mischaracterize these activities, nor did he rely on a single medical opinion to the exclusion of the other opinion evidence in the record."), *report and recommendation adopted by*, 2011 WL 4433146 (E.D. Tenn. Sept. 20, 2011). An ALJ is "not required to discuss all the evidence, as long as her factual findings as a whole show that she implicitly considered the record as a whole." *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 730 (6th Cir. 2013) (citing *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 507–08 (6th Cir. 2006)).

The ALJ also based her credibility determination on additional factors found in the record, rather than solely on Plaintiff's reported daily activities, as the ALJ noted that Plaintiff's allegations were not supported by objective radiological tests or his treatment notes. *Temples v. Comm'r of Soc. Sec.*, 515 F. App'x 460, 462 (6th Cir. 2003) ("[T]he ALJ did not give undue consideration to Temples' ability to performing day-to-day activities. Rather, the ALJ properly considered this ability as one factor in determining whether Temples' testimony was credible."). Ultimately, it is not for this Court to "try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

Therefore, the Court finds that the ALJ properly evaluated Plaintiff's credibility pursuant to the applicable regulations and policies, the ALJ's RFC determination is supported by substantial evidence, and Plaintiff's assignments of error do not constitute a basis for remand.

## V.    CONCLUSION

Based on the foregoing, Plaintiff's Motion for Summary Judgment [**Doc. 21**] will be **DENIED**, and the Commissioner's Motion for Summary Judgment [**Doc. 23**] will be **GRANTED**. The decision of the Commissioner will be **AFFIRMED**.  The Clerk of Court will be **DIRECTED** to close this case.

ORDER ACCORDINGLY.

Debra C. Poplin
United States Magistrate Judge